Argued May 24; reversed July 6, 1939

# YLVICH *v*. KALAFATE

(92 P. (2d) 178)

In Banc.

*Frank H. Reeves*, of Portland, for appellant.

*George W. Mead*, of Portland (S. J. Bischoff, of Portland, on the brief), for respondent.

BAILEY, J.   The plaintiff, Sam Ylvich, whose true name appears to be Simon Jovanovich, brought this action for the recovery from the defendant, Vincent Kalafate, of "18 Guernsey cows, 16 Jersey cows, 4 Jersey heifers, 3 Guernsey heifers, 2 chestnut mares approximately 14 years old, miscellaneous lot of farm equipment, including harrow, disc, plow and wagon", which personal property is alleged to be located on a farm operated by the defendant in Pallay park, Multnomah county, Oregon. The value of the cows and heifers is alleged to be $2,500; that of the team of horses, $100; and that of the farm equipment, $175. The prayer is for the immediate possession of the above-mentioned

personal property, or in the alternative the value thereof, if the defendant is unable to deliver such property to the plaintiff.

The defendant in his answer denies all the allegations of the complaint and for a separate, affirmative answer alleges that "a number of years ago" the defendant without consideration made and delivered to the plaintiff "a certain form of bill of sale" of personal property then in the possession of the defendant; that the bill of sale was made for the purpose of permitting the plaintiff as trustee "to hold merchantable title to said property during the pendency in this court of claim for damages on account of automobile accident", against the defendant, and "during the absence of the defendant and for no other purpose otherwise or at all"; that ever since the bill of sale was given by the defendant to the plaintiff the defendant has dealt with and treated as his own the personal property described in the bill of sale, by selling and mortgaging the same, with the knowledge of the plaintiff; that the plaintiff has at no time prior to the filing of the action exercised control over or claimed any right, title or interest in or to "any of said property belonging to the defendant herein or as claimed by the plaintiff in his action"; and that the plaintiff should be estopped from making claim as set forth in his complaint. In the next paragraph the defendant alleges that he has, during all the time mentioned in the answer, "been dealing in livestock and that personal property" described in the plaintiff's complaint is not the same property as described in the bill of sale "hereinbefore referred to and which said bill of sale defendant reiterates was given without consideration and with a full and com-

plete understanding between the parties that owner-ship should remain at all times with the defendant.''

In the reply the plaintiff admits the execution of the bill of sale by the defendant, and denies all the remaining allegations of defendant's answer.

The case was tried by the court without a jury, and judgment was entered in favor of the plaintiff for the recovery of the personal property described in the com-plaint, or $2,275, if delivery of such personal property could not immediately be had. From this judgment the defendant has appealed.

In his brief the plaintiff, respondent here, claims ownership of the personal property described in his complaint, by virtue of a bill of sale from the defendant to him, dated July 28, 1932. The property described in the bill of sale consists of ''38 head of cattle, 68 head of hogs, a team of horses, all farm equipment, approxi-mately 68 ton of hay, more or less'', and the bill of sale further states that the personal property is located in Pallay park on realty described as that certain farm on route 6, box 764, Portland post office district. The hogs and hay mentioned in the bill of sale are not here involved. The evidence in the case does not enlighten us as to the breeds of cattle making up the number thereof stated in the bill of sale. Yet the plaintiff attempts to prove ownership of the Jersey and Guernsey cows and heifers described in his complaint by the introduction of this bill of sale.

Both the plaintiff and the defendant are Slavs. The plaintiff cannot read or write, and he understands and speaks English imperfectly, so that it was necessary to have an interpreter during the trial. He was asked on direct examination if he was the owner of the cattle and farm implements described in the complaint, to

which he answered that he was. He then testified further as follows, the interpreter making his answers:

"Q. Are the cattle substantially the ones that are located there on the Kalafate farm now and described in the complaint the same as the cattle that are described in the bill of sale, with the increase of the ones that were there in the bill of sale? A. He says there is not all the cattle there that was at the time when he received this because he was selling them, but Mrs. Kalafate, she bought some cattle back, and the offspring from them cattle before is still there.

"Q. The offspring of the cattle that were there, described in the bill of sale? A. Exactly, still there."

On examination by counsel for the defendant the plaintiff was interrogated as follows:

"Q. How did you know how many Guernsey cows? A. [Interpreter] He just guessed at it. He didn't know just exactly how many it was. He says he didn't count none of the cows, or what they are, or anything."

The plaintiff then was examined by his own attorney, as follows:

"Q. Now, Sam, you say in answer to Mr. Reeves's question where did you get the description of the cattle, that you estimated the number of the cattle, at my request, that were there. That is correct, is it? A. He just said he made a guess, so much of each kind."

During the trial plaintiff's counsel placed much stress on evidence to the effect that the plaintiff had on November 27, 1928, purchased seven heifers and brought them to the defendant's farm. Two of them were still on the farm at the time this action was commenced, two had died and three had been sold. The plaintiff testified that he had sold these heifers to the defendant's wife for $350, but that she had paid only

$100 of the purchase price. Apparently the plaintiff has abandoned any claim to these cattle by title acquired through his original purchase, and the only claim he makes to the two remaining on the farm is that of ownership through the bill of sale from the defendant to him.

The defendant's son was questioned by plaintiff's counsel as to the cattle on the farm at the time of the trial. When asked how many Jerseys were there, he answered:

"Oh, about five or six, maybe ten, maybe twelve. They are mixtures. There are only two Jerseys in it. They are not pure Jerseys, then, I believe.

"Q. How many Jersey cows, that you would classify as a Jersey cow? A. Two of them that I really call Jerseys.

"Q. Aren't there more than ten cows that you classify as Jerseys? A. The other ten are mixtures of Jerseys, Guernseys, Holsteins, and so forth.

"Q. How many Guernsey cows are there? A. About eight or nine, I believe.

"Q. About eight or nine now. How many Jerseys are there? A. Two Jerseys, that I call Jerseys.

"Q. How many heifers? * * * A. About eleven or twelve.

"Q. What other cows are there there? A. There are some Holsteins.

"Q. How many Holsteins? A. About ten. When a cow is black and white I call her a Holstein. She really isn't a Holstein.

"Q. They are classified as Holsteins? A. Yes.

"Q. How many cows would you classify as Jerseys, although they are not thoroughbred? A. Some people come in there and claim that a cow is a Jersey; and the next guy claims it is a Guernsey.

"The Court: I think he has covered the classification."

■ An action to recover the possession of specific personalty, although designated as one for "claim and delivery" by the code § 4-301, Oregon Code 1930, is substantially the ancient remedy of replevin: *Freeman v. Trummer,* 50 Or. 287, 91 P. 1077; *Krebs Hop Co. v. Taylor,* 52 Or. 627, 97 P. 44, 98 P. 494. The action is strictly possessory and is based upon the defendant's wrongful detention of the demanded property and the plaintiff's right to its immediate possession: *Reed v. Mills,* 78 Or. 558, 154 P. 113; *Dober v. Ukase Investment Co.,* 139 Or. 626, 10 P. (2d) 356. Such an action can be brought only against the person having possession or control of the goods at the time the action is instituted: *Krebs Hop Co. v. Taylor,* supra; *Reed v. Mills,* supra; *Guille v. Wong Fook,* 13 Or. 577, 11 P. 277. The action is local in its nature and must be brought in the county in which the personal property is situated at the time the action is commenced: *Martindale v. Scott,* 86 Or. 648, 168 P. 933. The complaint must allege that the plaintiff is the owner, and is entitled to the possession, of the property involved, at the time the action is begun: *Simonds v. Wrightman,* 36 Or. 120, 58 P. 1100. The property sought to be recovered must be identified with reasonable certainty: *Guille v. Wong Fook,* supra.

■■ In the case at bar the complaint alleges that the personal property sought to be recovered is on a farm in Multnomah county, and at the trial it was stipulated that the farm is in that county. The personalty sought to be recovered is described with reasonable certainty: *Guille v. Wong Fook,* supra; *Fox v. Tift,* 57 Or. 268, 111 P. 51, Ann. Cas. 1912 D, 845. We have searched the record before us most carefully to find any evidence to support the finding of the trial court that the defendant at the commencement of this action had in his posses-

sion the designated numbers and breeds of cows and heifers described in the complaint, which the plaintiff owned and of which he was entitled to immediate possession. Although the complaint alleges that the plaintiff is the owner, and entitled to the immediate possession, of two chestnut mares and certain farm equipment mentioned, asserted to have been in the possession of the defendant at the beginning of the action and wrongfully withheld by him from the plaintiff, we find no evidence whatever to support that averment.

The testimony of the plaintiff relating to his ownership of certain personal property has hereinbefore been quoted. He admits that he was merely guessing the numbers of cows and heifers of different breeds. The only direct testimony as to the numbers and breeds of cows and heifers on the farm was that given by the defendant's son. His statement as to the number of Jerseys and Guernseys does not agree with the figures set forth in the complaint.

■ As the case was tried by the court without the intervention of a jury, its findings on material issues are binding and conclusive upon this court, if there is any substantial evidence to support such findings. Yet there is no evidence in the record to support the allegations of the complaint and the findings of the court that the plaintiff is the owner, and entitled to immediate possession, of the specific property demanded, and that the same is in the possession of the defendant and was in his possession when the action was commenced. Nor are we able to ascertain from the record the number of cows and heifers owned by the plaintiff and wrongfully withheld by the defendant.

■ It was stipulated at the trial that the value of the personal property described in the complaint is as fol-

lows: cows and heifers, $2,000; horses, $100; and farm equipment, $175. This stipulation was entered into merely to obviate the necessity of calling witnesses to prove the value of such personalty, and it was not intended that the defendant should thereby be understood to admit that the personal property was owned by the plaintiff or that the same was, at the commencement of the action or at any other time, in the possession of the defendant or wrongfully withheld by him from the plaintiff.

The plaintiff argued the case in this court on the theory that the defendant had in his possession at the time the bill of sale was given by him to the plaintiff, 38 head of cattle and other personal property, including horses and farm implements; that none of such property was ever delivered by the defendant to the plaintiff; and that if at the time this action was instituted he did not have the same in his possession, then the defendant was chargeable with conversion of such personalty. We find in his brief this statement:

"It is also asserted that there is no evidence of the existence of the personal property. For the purpose of this case, it is immaterial whether the property is in existence or not. If the property belonged to the plaintiff and the defendant has disposed of it, he is liable for conversion in any event."

The immediate question with which we are here concerned is this: Has the plaintiff proved the allegations of his complaint for the possession of certain personal property? The action is one of claim and delivery, and not conversion. Plaintiff's misconception in this respect may account for his failure to prove the material allegations of his complaint.

The stipulation did not specify, and no evidence was introduced to show the value of the cows and heifers individually or grouped by age or breed. Nor was there any evidence as to the value of the various items of farm equipment. In *Fox v. Tift,* supra, this court quoted with approval from *Pickett v. Bridges,* 10 Humph. (Tenn.) 171, as follows:

"Now, if the property replevied be alike in its character, and not possessed of a distinct and separate quality, and be so described in the proceedings to be, a general assessment of value ought to be made.  *  *  * But if it be for distinct and separate articles having no identity of character, the value ought to be assessed for each distinct and separate article, as if it be a horse and wagon, a negro and a mule."

See, also, *Guille v. Wong Fook,* supra.

Even if the evidence introduced had been sufficient to sustain the allegations of the complaint, nevertheless an almost insuperable difficulty would have arisen, had the defendant failed or been unable to make delivery to the plaintiff of a part of the property described in the complaint. For example, had the defendant been unable to deliver a lesser number of cows or heifers than the respective numbers mentioned in the complaint, there is nothing in the complaint, the findings or the judgment to establish the value of those not delivered. It can not be assumed that the various cows and heifers are all of identical value. This is true also as applied to the farm equipment.

Due to the insufficiency of the evidence to support the findings, the judgment based thereon is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

RAND, C. J., and ROSSMAN, KELLY and BEAN, JJ., concur.